## UNITED STATES FIDELITY & GUARANTY CO. v. WYER.

### No. 616.

Circuit Court of Appeals, Tenth Circuit.

Aug. 1, 1932.

McDERMOTT, Circuit Judge, dissenting.

A. G. Croninger and Ray McNaughton, both of Miami, Okl., for appellant.

E. C. Fitzgerald and Wm. M. Thomas, both of Miami, Okl., for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

COTTERAL, Circuit Judge.

This suit was brought by W. H. Wyer on an automobile liability policy issued by the appellant company to J. L. Suffecool, superintendent of the Quapaw Indian Agency, for Willie Buffalo, an incompetent member of the Quapaw Tribe, indemnifying the latter up to $10,000 for injuries which might result from the use of a Graham-Paige coupe owned by him.

Wyer's alleged cause of action was that he had brought a previous action against Buffalo for personal injuries sustained when his car was wrongfully driven into Wyer's conveyance; that the action was defended by the company and resulted in a judgment on April 29, 1930, for $20,000 with interest and costs, on which execution was issued and returned unsatisfied; that by virtue of Buffalo's insolvency and Wyer's inability to collect the judgment, the company, by the terms of the policy, has become liable for that judgment to the extent of $10,000.

The answer of the company alleged that its defense of the former suit was with a reservation of its rights under the policy, that although Buffalo and his chauffeur, O. V. Jolley, drove the car and their negligence proximately caused Wyer's injuries, they willfully represented to the company that the car was not driven by them at the time of the accident but by some person unknown, Buffalo obtained $500 from the company on the representation that the car had been stolen when the accident occurred, the misrepresentations were relied upon by the company, he did not co-operate with the company in securing its rights, which was a condition of liability, and Wyer's rights to recover against the company were no greater than those of Buffalo, had he paid the judgment of Wyer.

By his reply, Wyer admitted Jolley and Buffalo drove the car at the time of the collision and their negligence was the proximate cause of Wyer's injuries, and alleged the company defended the suit, presented a motion for a new trial and partially effected an appeal, and thereby waived any failure of co-operation by Buffalo.

A jury was waived and the cause was tried to the court. The company duly saved its rights by requests for findings, declarations of law, and a judgment in its favor. The court made adverse findings, and by reason of the former recovery judgment was rendered herein against the company for $10,000, interest, and costs.

The company joined with Buffalo in defending that suit. The record shows that after judgment the company filed and argued a motion for a new trial, which was overruled, secured a brief stay of the judgment and an extension of ninety days to make and serve a case-made, but notified Suffecool and Buffalo by letter of June 9, 1930, that for various reasons and particularly the findings of the jury it withdrew from all further part in the defense.

The company assigns two main errors for reversal, but presents only the second, which complains of the denial of its motion for judgment for want of supporting facts, and particularly because under the pleadings, admissions, and uncontroverted evidence the failure of co-operation by Buffalo in the former suit released the company from liability.

The policy recites that in consideration of the premiums and subject to the terms, limits, and conditions stated, the company insures Buffalo against property loss and liability for accidents up to $10,000, at its expense, reserves the right to settle any claim or suit, extends the insurance to other drivers of the car, agrees that it will defend suits against him whether groundless or not, that the insolvency or bankruptcy of the insured shall not release the company from damages for injury, and in case execution is returned unsatisfied against him, an action may be maintained by an injured person against the company, under the terms of the policy.

The policy also provides it is subject to certain conditions, one of them being that immediate written notice of an accident with fullest information obtainable must be given to the company, another that the company reserves the right to settle any claim or suit, and others that, when requested by the company, "the assured shall aid in securing information, evidence and the attendance of witnesses in effecting settlements and in defending suits," and that "the assured shall at all times render to the company all reasonable co-operation and assistance." By an amendment, authorized by the policy, the insurance extended to other drivers of the car was withdrawn.

█ The first question presented is whether, as appellee insists, there were findings of fact by the trial court in this case that bar consideration of the error assigned. The findings were that Buffalo was insolvent, had no property subject to execution, appellant assumed the defense of the former suit, and Buffalo and his counsel co-operated in the defense of that suit.

It is thoroughly settled that in a trial where

a jury is waived the findings of fact upon conflicting evidence are conclusive on appeal. But the facts were not disputed in this case that Buffalo and Jolley represented to the company that they were not in the car when the accident occurred, both so testified in the former case and Buffalo in this, and Buffalo obtained $500 from the company for theft of the car. It is true he and his attorneys assisted in the defense, and both he and Jolley testified for the company. And the adjuster of the company testified Buffalo's co-operation was 100 per cent. But that was a conclusion, drawn from the fact that Buffalo did not collude with the plaintiff and joined with his attorney in an effort to defeat the action. Buffalo's misrepresentation of the facts respecting the accident stood adjudicated in the former suit, and Wyer admitted it. All the evidence was one way on the subject of co-operation, in that respect. Only a question of law was therefore involved as to whether upon the undisputed facts there was co-operation as required by the insurance contract; and it is reviewable in this court. White v. United States (C. C. A.) 48 F.(2d) 178; Larabee Flour Mills Co. v. Carignano (C. C. A.) 49 F.(2d) 151.

█ Wyer was not a party to the insurance contract. By the terms of the policy, he had only the right of Buffalo to recover, in case of his insolvency or bankruptcy and an execution unsatisfied against him, if the latter would have had that right on paying the judgment. Clements v. Preferred Accident Insurance Co. (C. C. A.) 41 F.(2d) 470, 76 A. L. R. 17; Metropolitan Casualty Insurance Co. v. Colthurst (C. C. A.) 36 F.(2d) 559; Royal Indemnity Co. v. Morris (C. C. A.) 37 F.(2d) 90; Hermance v. Globe Indemnity Co., 221 App. Div. 394, 223 N. Y. S. 93; Coleman v. New Amsterdam Casualty Co., 247 N. Y. 271, 160 N. E. 367, 72 A. L. R. 1443; Weatherwax v. Royal Indemnity Company, 250 N. Y. 281, 165 N. E. 293; Seltzer v. Indemnity Co., 252 N. Y. 330, 169 N. E. 403.

█ This brings us to the main question; and that is, whether Buffalo rendered such co-operation to the company as to meet that condition to its liability. The company asserts that the condition in the policy bound Buffalo to report a fair and truthful account to enable the company to determine whether there was a defense to the damage suit and bring to its aid the material facts without misrepresentation or concealment, and his violation of that duty absolved the company from liability. Wyer's contention is that the

company was bound to show the failure of co-operation affected the judgment in the damage suit, and as there was no such showing, its liability was established.

The controversy has been before the courts. In Coleman v. New Amsterdam Casualty Co., 247 N. Y. 271, 160 N. E. 367, 369, 72 A. L. R. 1443, the assured declined to assist in the defense of the damage suit. By the state law, in case of the insolvency of the assured, suit was authorized by an injured person "under the terms of the policy." The defense was, a condition of the policy was breached. The court (opinion by Chief Justice Cardozo, now Associate Justice of the United States Supreme Court) ruled: "Co-operation does not mean that the assured is to combine with the insurer to present a sham defense. Co-operation does mean that there shall be a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense." It was contended the default should be condoned as there was no evidence that the co-operation of the insured would have defeated or diminished the claim for damages, but it was held: "For all that appears, the insurer would be no better off if the assured had kept its covenant, and made disclosure full and free. The argument misconceives the effect of a refusal. Co-operation with the insurer is one of the conditions of the policy. When the condition was broken, the policy was at an end, if the insurer so elected. The case is not one of the breach of a mere covenant, where the consequences may vary with fluctuations of the damage. There has been a failure to fulfill a condition upon which obligation is dependent."

In Buckner v. Buckner (Wis.) 241 N. W. 342, 344, it was said that "co-operation" was defined almost universally as in the Coleman Case. It was further held: "This is not to say that any slight error in the statement of facts or failure to disclose some collateral fact will necessarily be held to amount to a breach of the contract, but the withholding of information, the making of untruthful statements, and the concealing of necessarily relevant and material facts can have but one purpose, and that is to help the claimant rather than the insurer."

There are other cases sustaining the principle. Rohlf v. Great American Mutual Indemnity Co., 27 Ohio App. 208, 161 N. E. 232; Clements v. Preferred Accident Ins. Co., supra.

The contention of Wyer has support in

the authorities. Huddy, Cyc. Auto Law (9th Ed.) 297, 298, and the cases cited. In some of those cases, it was held the insurer must show the non co-operation of the insured affected the judgment for damages. In others, it was held necessary to show substantial prejudice to the rights of the insurer. It may be said that test was met, in that the company was deprived of contesting the issue of negligence on the facts.

But we are impressed that non co-operation as shown in this case was of itself a well-founded defense. It was sufficient for the reason, if for no other, that co-operation was stipulated in the contract to be a condition to liability.

■■ It is also insisted the company waived the condition by defending the suit after it learned of the non co-operation of Buffalo.

The undisputed testimony is that on the representation of Buffalo and Jolley that the car had been stolen and they had not driven it at the time of the collision, the company undertook to join in the defense of the suit with a reservation of all its rights. This it was entitled to do upon an understanding, express or implied, with the insured. Fidelity & Casualty Co. v. Stewart Dry Goods Co., 208 Ky. 429, 271 S. W. 444, 43 A. L. R. 318; Gordon v. Massachusetts Bonding & Insurance Co., 229 N. Y. 424, 128 N. E. 204; Ford Hospital v. Fidelity & Casualty Co., 106 Neb. 311, 183 N. W. 656; Sargent Mfg. Co. v. Travelers' Ins. Co., 165 Mich. 87, 130 N. W. 211, 34 L. R. A. (N. S.) 491; Seltzer v. Indemnity Company, supra; Hermance v. Globe Indemnity Co., supra.

But the insurer must not know of the breach of the policy when conducting the defense. Miller v. Union Ind. Co., 209 App. Div. 455, 204 N. Y. S. 730; Francis v. London Guarantee & Accident Co., 100 Vt. 425, 138 A. 780; New Jersey F. & P. G. Ins. Co. v. McGillis (C. C. A.) 42 F.(2d) 789.

In this case the company had only the information imparted by Wyer's evidence. Neither Buffalo nor Jolley has ever recanted his account. The withdrawal from the case, by letter of June 9, 1930, was timely. There was no evidence to show the agents of the company theretofore believed there was misrepresentation by Buffalo. We conclude the steps leading to an appeal were taken within the reserved rights of the company and constituted no waiver of the defense. Meyers v. Continental Cas. Co. (C. C. A.) 12 F.(2d) 52; Rohlf v. Great American Mutual Indemnity Co., supra; Commercial Casualty Ins. Co. v. Fruin Colnon Contracting Co. (C. C. A.) 32 F.(2d) 425; Hermance v. Globe Indemnity Co., supra.

The facts differ materially from those shown in New Jersey F. & P. G. Ins. Co. v. McGillis (C. C. A.) 42 F.(2d) 789, cited by appellee. There the company was fully apprised of the facts. Besides, it had taken from McGillis his right to defend or settle the action.

In our opinion, the judgment was erroneously rendered for appellee. It is accordingly reversed, and the cause is remanded to the District Court with direction for further proceedings consistent with this opinion.

Reversed.

McDERMOTT, Circuit Judge (dissenting).

The majority opinion holds that if the insured makes a materially false statement to the insurer, the co-operation clause has been breached as a matter of law. I agree that an insured should always state the facts truthfully to his insurer, as to every one else. A false statement is evidence of a lack of co-operation; the court holds it is conclusive evidence thereof. With that, I do not agree. The question before us is this: Considering all the evidence, is the trial court's special finding of co-operation sustained by substantial evidence?

Buffalo stated to the company that he was not in the car when the accident happened. He gave the company's adjuster leads as to witnesses. He employed counsel to aid counsel employed by the company. He and his chauffeur testified at the trial that he was not in the car. Buffalo, at this trial, still insists he was not in the car. The attorney and adjuster for the company testified at this trial as follows: "From the investigation that I made after talking to divers and sundry persons I was rather under the impression that neither Willie Buffalo nor O. V. Jolley were in that car. My leads as to witnesses came from them. I talked to other witnesses and that was the position I took at the trial. I am not certain whether I was present when Mr. Buffalo and Mr. Jolley testified at the trial of the case in the District Court, but I know that they testified to the same state of facts that they gave me in that statement. They have maintained that statement ever since the accident. I have never found that Willie Buffalo was in any man-

ner colluding with the plaintiff in the action, nor did I, as the agent and the adjuster of the United States Fidelity & Guaranty Company, ever ask Willie Buffalo or his attorneys to do anything in assisting in the defense of that action that they didn't do. The co-operation was 100%."

Mr. Commons, the attorney employed by Buffalo, and a witness called by the defendant, testified: "The Court: There was no complaint by Mr. McNaughton [attorney for surety company at the trial] that you and Willie Buffalo were not assisting in the defense, co-operating and trying to defeat liability were they? A. No, sir."

Whether or not there has been co-operation is a conclusion to be drawn from the evidentiary facts. If reasonable men may differ as to the conclusion to be drawn, then it is for the trier of the facts to determine. The majority brush aside the testimony of the attorney and adjuster of the company, admitted without objection, that Buffalo's "co-operation was 100%" as a conclusion. It is a conclusion; but it is one drawn by a skilled witness after stating the facts on which the conclusion is based; and such a conclusion is generally excepted from the ban. Wigmore on Evidence, §§ 1922, 1923. But laying aside that evidence, we have the evidentiary facts that Buffalo aided in securing evidence, employed counsel to assist in the defense, and testified there, as he testifies here, to a state of facts disclosing no liability. Is a jury or a trial court at liberty to conclude from this evidence that there was co-operation? The majority hold not; with that holding I am not in accord. We do not need to infer that the surety company colluded with Buffalo to beat this claim by false evidence, as appellee suggests, although that inference is not foreclosed. It is enough to suggest that an insurer has a right to defend on the basis of the insured's statement. Even though its investigation sheds doubt on the accuracy of insured's version, as the adjuster here indicated, the company has a right to let the insured tell his story to the jury. Gordon v. Mass. Bonding & Ins. Co., 229 N. Y. 424, 128 N. E. 204; Hermance v. Globe Indemnity Co., 221 App. Div. 394, 223 N. Y. S. 93. The trial court might well conclude that that is what happened here; that the company, with nothing to lose and much to gain, took the position that the jury should hear the conflicting stories and determine the fact; whether the company believed or did not believe Buffalo's story, his testimony aided in defending the suit.

Furthermore, the company should prove that it relied upon the statement of the insured—not that it need be prejudiced by reliance, but that it did believe and rely thereon. For example, if a company should concede that it knew at the outset that the insured's statement was false, and that it did not rely thereon, but nevertheless encouraged the insured to stick to his story for its benefit, there could be no claim of lack of co-operation. The defense made is an affirmative one. Is there proof of reliance? The majority find it in the payment by "the company" of $500 on a burglary policy. But it was another company—the Maryland Insurance Company—and not appellant. That company's insurance against burglary and appellant's insurance against liability, were incorporated in the same policy, but the appellant cannot on that account avail itself of another company's loss. But even if it were the same company, the fact that it believed the story when the burglary policy was paid is not conclusive evidence that it believed it when the damage suit was tried, months later. It is suggested that the company might have settled the case, except for insured's statement. But such surmise finds no support in the record, for there is no intimation of any opportunity to settle for less than the verdict, or the face of the policy. The only evidence in the record of reliance is the significant circumstance that while the adjuster interviewed other witnesses from leads given by Buffalo, he failed to testify as to what he learned from them; and the very weak statement by the adjuster that "I was rather under the impression" that Buffalo was not in the car. I think therefore that the trial court was justified in finding that the company failed to establish that it relied upon Buffalo's statement.

The frequently quoted excerpt from the opinion of Judge Cardozo, in Coleman v. New Amsterdam Casualty Co., 247 N. Y. 271, 160 N. E. 367, 72 A. L. R. 1443, relied upon by the majority, should be read in connection with the case before that court. No question of an untrue statement was there involved. The insured in that case refused to give any information, or sign an answer, unless the company would pay him for the information. The Court of Appeals of New York does not consider the Coleman Case as holding that a false statement amounts to a breach of the co-operation clause as a mat-

ter of law. In the later case of Seltzer v. Indemnity Ins. Co., 252 N. Y. 330, 169 N. E. 403, it appeared that the insured made a statement to the insurer which exculpated him from liability; at the trial he declined to testify in accordance with the statement. The trial court was reversed because it did not submit the question of co-operation to the jury.

Where the evidence is uncontradicted, and where only one conclusion can reasonably be drawn therefrom, whether the co-operation clause has been breached is a question of law. This was held, and properly so, in the Coleman and Rohlf Cases, cited in the majority opinion, where the insured refused any information, or declined to sign an answer or attend the trial. Where the evidence conflicts, or where different conclusions may be drawn, the question is for the jury. Seltzer v. Indemnity Ins. Co., supra; Metropolitan Casualty Co. v. Blue, 219 Ala. 37, 121 So. 25; and cases cited in note, 72 A. L. R. 1454. The majority opinion holds that but one conclusion may be drawn from this record. It seems to me that where an insured denies responsibility for the accident, aids in securing witnesses, employs counsel to assist in the defense, and does everything the company requests to assist in defeating the claim, there is support for a finding that the condition was not breached.

The protection of liability insurance has been quite generally extended, either by statute or contract, to third persons injured by the insured. It seems to me that this decision seriously impairs that protection, for it appears that the insurer will escape liability to the public whenever the insured makes a statement of facts to the insurer disclosing that he was not at fault; if the jury believes him, there is no judgment and no liability; if the jury does not believe him, and a judgment follows, the insurer escapes liability by alleging that the insured made an untrue statement, which the third party plaintiff must admit if he is to be consistent with his testimony at the first trial. If an untrue statement is conclusive proof of a lack of co-operation, this unfortunate result may be deplored, but it cannot change the contract. But the company did not condition the liability upon the accuracy of the statements made to it by the insured, but upon his co-operation in defense. Believing that there is support in the record for the trial court's finding of fact, I think the judgment should be affirmed.