[Cite as *R&M Materials Handling, Inc. v. Cincinnati Ins. Co.*, 2014-Ohio-949.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

R&M MATERIALS HANDLING, INC.

     Plaintiff-Appellee/Cross-Appellant

v.

THE CINCINNATI INSURANCE CO.

     Defendant-Appellant/Cross-Appellee


Appellate Case No.    2013-CA-40

Trial Court Case No.   2011-CV-154


(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of March, 2014.

. . . . . . . . . . .

TODD A. BRENNER, Atty. Reg. No. 0051839, 555 Metro Place North, Suite 225, Dublin, Ohio 43017
     Attorney for Plaintiff-Appellee/Cross-Appellant

RICHARD M. GARNER, Atty. Reg. No. 0061734, DENNIS R. FOGARTY, Atty. Reg. No. 0055563, 1200 Fifth Third Center, 600 Superior Avenue, East, Cleveland, Ohio 44114
     Attorney for Defendant-Appellant/Cross-Appellee

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}   Defendant-Appellant/Cross-Appellee, The Cincinnati Insurance Company, appeals from the decision of the Champaign County Court of Common Pleas granting summary judgment in favor of Plaintiff-Appellee/Cross-Appellant, R&M Materials Handling, Inc., on its supplemental complaint filed pursuant to R.C. 3929.06.   R&M Materials Handling, Inc. has also filed a cross-appeal from the trial court's decision regarding the amount of prejudgment interest it was awarded.   For the reasons outlined below, we reverse the judgment of the trial court and remand the cause for further proceedings.

## I. Facts and Course of Proceedings

{¶ 2}   On March 17, 2004, R&M Materials Handling, Inc. (R&M), filed a complaint against Paris Parts, LLC (Paris Parts), as well as four other defendants, in the United States District Court for the Southern District of Ohio.   As part of its complaint, R&M alleged claims of copyright infringement, copyright conversion, trademark infringement, trademark disparagement, misappropriation of trade secrets, breach of fiduciary duty, tortious interference with business relationships, unfair competition, deceptive trade practices, and unjust enrichment. When the lawsuit commenced, Paris Parts was insured by The Cincinnati Insurance Company (CIC), under an insurance policy that included commercial general liability coverage.   As a result, Paris Parts forwarded R&M's complaint to CIC and requested CIC to defend and indemnify the company.   By letter dated June 7, 2004, CIC determined that no coverage existed under the policy for R&M's claims, and it declined to defend and indemnify Paris Parts.

{¶ 3}   During the course of litigation, R&M voluntarily dismissed the complaint against

Paris Parts only to refile the action in the District Court on May 15, 2006. The refiled complaint removed one defendant and limited R&M's claims to misappropriation of trade secrets, trademark infringement, trademark disparagement, unfair competition, tortious interference with business relations, and deceptive trade practices. On July 15, 2010, an agreed judgment was entered against Paris Parts on all counts asserted in the refiled complaint. Thereafter, on August 19, 2010, the District Court awarded R&M damages in the amount of $2,281,934 plus interest from the date of judgment and costs. CIC was first notified of the refiled action two months after R&M was awarded the judgment.

{¶ 4} Paris Parts did not satisfy the judgment, so on June 10, 2011, R&M filed a supplemental complaint for damages against CIC pursuant to R.C. 3929.06 in the Champaign County Court of Common Pleas. The supplemental complaint alleged that CIC was required to indemnify Paris Parts under its insurance policy and pay R&M the policy's $1,000,000 liability limit. Specifically, R&M alleged that the policy provided liability coverage for "advertising injury," and that said coverage was triggered by its trademark infringement claim against Paris Parts.

{¶ 5} Thereafter, R&M and CIC filed cross-motions for summary judgment on the supplemental complaint. CIC contended in its motion that there was no genuine issue of material fact that coverage does not exist for Paris Parts under the "advertising injury" provisions of the policy because: (1) R&M's damages did not arise from an "advertising injury" as defined in the policy; (2) an advertising injury was not caused in the course of advertising Paris Parts's goods, products, or services during the policy period; (3) the policy's various exclusions preclude coverage; and (4) Paris Parts failed to comply with a precondition to coverage when it did not

notify CIC of the refiled lawsuit. In support of its motion for summary judgment, CIC attached all relevant pleadings and correspondences, the policy at issue, and an affidavit of CIC's Casualty Claims Superintendent, Michael Lally.

{¶ 6} R&M argued in its motion for summary judgment that there is no genuine issue of material fact that the trademark claims alleged against Paris Parts triggered coverage under the policy as an "advertising injury" given that the trademark claims stemmed from Paris Parts improperly advertising and marketing R&M's products. Additionally, R&M claimed that the policy's exclusions do not preclude coverage because they only apply to advertising injuries based on libel, slander, disparagement, and invasion of privacy. R&M also contended that there was no genuine issue of material fact that CIC declined to defend or indemnify Paris Parts after it obtained notice of the original lawsuit in 2004, and that said denial waived Paris Parts's obligation to abide by the policy's notice conditions. In support of its cross-motion for summary judgment, R&M merely attached the underlying complaint from 2004 and the corresponding civil coversheet.

{¶ 7} The trial court denied CIC's motion for summary judgment, but granted summary judgment in favor of R&M in the amount of the policy's $1,000,000 liability limit. In so holding, the trial court made no findings of fact and did not specify the amount of prejudgment interest to be awarded R&M. As a result, R&M filed a motion for prejudgment interest arguing that it was entitled to interest from June 7, 2004, the date that CIC refused to defend and indemnify it, which amounted to $448,100. The trial court, however, determined that R&M was entitled to prejudgment interest from September 18, 2010, the date on which R&M became eligible to assert a claim against CIC under R.C. 3929.06, which amounted to $77,123.29.

**{¶ 8}** CIC now appeals from the trial court's decision granting summary judgment in favor of R&M, raising one assignment of error. R&M has also filed a cross-appeal regarding the award of prejudgment interest and raises one assignment of error.

## II. Assignment of Error

**{¶ 9}** CIC's sole assignment of error is as follows:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING PLAINTIFF-APPELLANT R&M MATERIALS HANDLING INC.'S MOTION FOR SUMMARY JUDGMENT AND OVERRULING DEFENDANT-APPELLEE THE CINCINNATI INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT.

**{¶ 10}** Under this assignment of error, CIC contends that the trial court erred in granting summary judgment in favor of R&M on the issue of coverage because: (1) Paris Parts did not cause an "advertising injury" as defined by the policy; (2) an advertising injury was not caused in the course of advertising Paris Parts's goods, products, or services during the policy period; (3) the policy exclusions preclude coverage; and (4) Paris Parts failed to comply with a precondition to coverage when it did not notify CIC of the refiled lawsuit.

### Summary Judgment Standard

**{¶ 11}** A trial court may grant a moving party summary judgment "if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence and written stipulations of fact, if any timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

In other words, summary judgment may be granted "if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." (Citation omitted.) *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999).

{¶ 12} "A party who moves for summary judgment bears the initial burden of informing the trial court of the basis of its motion and 'identifying those portions of the record that demonstrate the genuine absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims * * *.' " *Doriott v. MVHE, Inc.*, 2d Dist. Montgomery No. 20040, 2004-Ohio-867, ¶ 37, quoting *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). "We review summary judgment decisions de novo, which means that we apply the same standards as the trial court." (Citations omitted.) *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).

## R.C. 3929.06

{¶ 13} The cross-motions for summary judgment in this case arise from R&M filing a complaint against CIC pursuant to R.C. 3929.06. Under R.C. 3929.06, plaintiffs who are awarded damages at trial may file a posttrial, supplemental complaint against the judgment debtor's insurer to recover damages covered under the judgment debtor's insurance policy. *Estate of Heintzelman v. Air Experts, Inc.*, 126 Ohio St.3d 138, 2010-Ohio 3264, 931 N.E.2d 548, ¶ 11. Specifically, R.C. 3929.06(A)(1) provides that the plaintiff "is entitled as judgment creditor to have an amount up to the remaining limit of liability coverage provided in the

judgment debtor's policy of liability insurance applied to the satisfaction of the final judgment." If the judgment debtor's insurer has not paid the judgment creditor within 30 days of the entry of final judgment, "the judgment creditor *may* file in the court that entered the final judgment a supplemental complaint against the insurer seeking the entry of a judgment ordering the insurer to pay the judgment creditor the requisite amount." (Emphasis added.) R.C. 3929.06(A)(2). "The word 'may' within the statute indicates that a judgment creditor is merely permitted-not mandated-to file its action in the same court pronouncing judgment." *Benahmed v. Houston Cas. Co.*, 486 Fed.Appx. 508 (6th Cir.2012).

{¶ 14} In a supplemental action, the plaintiff's rights against the defendant insurer "cannot rise above those of the insured." *Bennett v. Swift & Co.*, 170 Ohio St. 168, 163 N.E.2d 362 (1959), paragraph one of the syllabus. Therefore, "a plaintiff proceeding against an insurance company under a supplemental complaint is subject to the limitations and conditions of the insurance contract between the insurance company and its insured * * *." *Appointe v. Seecharan*, 8th Dist. Cuyahoga No. 86408, 2006-Ohio-938, ¶ 21, citing *Conold v. Stern,* 138 Ohio St. 352, 35 N.E.2d 133 (1941) and *Bennett at* paragraph one of the syllabus. Accordingly, the plaintiff in a supplemental action must prove by a preponderance of the evidence, that the terms of the policy have been complied with. *Teter v. Kenilworth Ins. Co.*, 9th Dist. Lorain No. 2283, 1975 WL 180667, *1 (July 30, 1975); *see also Owens-Illinois, Inc. v. Aetna Cas. & Sur. Co.*, 990 F.2d 865, 874 (6th Cir.1993).

## Policy Analysis

{¶ 15} The language of the CIC policy in this case must be reviewed to determine whether the trial court correctly concluded that coverage exists for Paris Parts's actions under the

"advertising injury" provisions of the policy. The policy provides that CIC "will pay those sums that the insured becomes legally obligated to pay as damages because of * * * 'advertising injury' to which this insurance applies." The insurance applies to: " 'Advertising injury' caused by an offense committed in the course of advertising [Paris Parts's] goods, products or services; but only if the offense was committed in the 'coverage territory' during the policy period."

{¶ 16}  "Advertising injury" is defined by the policy as an injury arising out of one or more of the following offenses:

a.) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b.) Oral or written publication of material that violates a person's right of privacy;

c.) Misappropriation of advertising ideas or style of doing business; or

d.) Infringement of copyright, title or slogan.

{¶ 17}  R&M claims that Paris Parts's act of trademark infringement qualifies as an "advertising injury" under "misappropriation of advertising ideas or style of doing business." In its appellate brief, CIC concedes that courts have interpreted trademark infringement claims to imply misappropriation of advertising ideas and style of doing business, but requests that we follow the contrary view set forth in *Advance Watch Co., Ltd. v. Kemper Natl. Ins. Co.*, 99 F.3d 795, 800-803 (6th Cir.1996). In that case, the Sixth Circuit reviewed policy language similar to that at issue here and held that under Michigan law, "misappropriation of advertising ideas or style of doing business" covered under the "advertising injury" provision of a commercial general liability policy did not extend to claims of trademark or trade dress infringement. *Id*. at 802.

{¶ 18}  However, in *AMCO Ins. Co. v. Lauren-Spencer, Inc.*, 500 F.Supp.2d 721

(S.D.Ohio 2007), the United States District Court for the Southern District of Ohio recognized that *Advance Watch* "has often been severely criticized by other courts and represents the minority view." *Id.* at 730, citing *Pizza Magia Intl., LLC v. Assurance Co. of America*, 447 F.Supp.2d 766, 772 (W.D.Ky. 2006). The District Court determined that "Sixth Circuit law cannot control * * * because Ohio explicitly rejected * * * *Advance Watch's* 'restrictive holding' " in *Westfield Ins. Co. v. Factfinder Marketing Research, Inc.*, 168 Ohio App.3d 391, 2006-Ohio-4380, 860 N.E.2d 145 (1st Dist.). *AMCO* at 732. Moreover, the District Court credited *Factfinder's* analysis of the misappropriation issue. *Id.*

**{¶ 19}** In *Factfinder*, the First Appellate District concluded that the plaintiff's allegation that the defendant wrongly used its "trademarks in materials presented to clients," which "misled the clients as to the origin of the products and services" arguably fell under "misappropriation of advertising ideas of style of doing business." *Factfinder* at ¶ 27. The court noted that it has been "generally found that trade-dress and trademark infringement can be covered under the policy as an advertising injury caused by the 'misappropriation of advertising ideas or style of doing business,' where the misappropriated intellectual property draws the public's attention to the product and makes the source of the product readily identifiable." (Citation omitted.) *Id*. at ¶ 22.

**{¶ 20}** Additionally, *Factfinder* stated that "advertising idea" has been found to mean " 'any idea or concept related to the promotion of the product to the public.' " *Id*. at ¶ 23, quoting *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1188 (11th Cir.2002). (Other citation omitted.) *Factfinder* further indicated that, "style of doing business" has been interpreted as " 'the manner in which a company promotes, presents, and markets its products to

the public.' " *Id*. at ¶ 24, quoting *Hyman* at 1189 and *Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins*., 165 F.Supp.2d 1332, 1339 (S.D.Fla. 2001).

**{¶ 21}** In the present case, R&M alleged trademark infringement on grounds that Paris Parts "used and continued to use reproductions, copies or colorable imitations of [R&M's] registered trademarks in connection with the sale, offering for sale, distribution or advertising of [Paris Parts's] goods." Complaint (May 15, 2006), ¶ 42. R&M also alleged that the use of its trademark by Paris Parts "is likely to cause confusion or mistake and is likely to deceive." *Id.* at ¶ 43. By entering an agreed judgment on all counts asserted in the complaint, Paris Parts admitted liability for trademark infringement. Accordingly, there is no genuine issue of material fact that Paris Parts engaged in trademark infringement as alleged.

**{¶ 22}** R&M's trademark infringement allegations are very similar to the allegations in *Factfinder* stating that the defendant wrongly used its "trademarks in materials presented to clients," which "misled the clients as to the origin of the products and services." *Factfinder Marketing Research, Inc.*, 168 Ohio App.3d 391, 2006-Ohio-4380, 860 N.E.2d 145 at ¶ 27. We agree with *Factfinder's* conclusion that the alleged conduct "arguably fall[s] under the misappropriation of advertising ideas or style of doing business, as it has come to be defined." *Id.* Therefore, we conclude that Paris Parts's improper use of R&M's trademark in connection with the sale, offering for sale, distribution, or advertising of its goods, which is likely to deceive the public, arguably qualifies as "misappropriation of advertising ideas or style of doing business" and an "advertising injury" as defined by the policy.

**{¶ 23}** Although Paris Parts's trademark infringement may qualify under the general term of "advertising injury," the coverage analysis is not complete, because of the specific

limitations of that term in the CIC policy. According to the policy, coverage only applies to an advertising injury that is "caused by an offense committed in the course of advertising [Paris Parts's] goods, products or services."

**{¶ 24}** Trademark infringement involves advertising. *Westfield Cos. v. O.K.L. Can Line*, 155 Ohio App.3d 747, 2003-Ohio-7151, 804 N.E.2d 45 ¶ 15-16 (1st Dist.), citing *Poof Toy Products, Inc. v. United States Fidelity & Guaranty Co.*, 891 F.Supp. 1228, 1236 (E.D.Mich.1995); *Factfinder*, 168 Ohio App.3d 391, 2006-Ohio-4380, 860 N.E.2d 145 at ¶ 33. Yet, it still must be demonstrated that the insured engaged in "advertising" as that term is defined in the policy. *See, e.g., O.K.L. Can Line* at ¶ 16 (finding that while trade-dress infringement necessarily involves advertising, "this principle does not resolve this case because 'advertisement' was specifically defined in the * * *policy" and "in the policy's words, the injury had to arise out of 'a notice that is broadcasted or published to the general public' * * *."); *see also AMCO*, 500 F.Supp.2d at 732-733.

**{¶ 25}** In this case, the CIC policy defines "advertising" as "an advertisement, publicity article, broadcast or telecast." The term, "advertisement" is not defined in the policy, but *Black's Law Dictionary* (6th Ed.1990) defines it as "notice given in a manner designed to attract public attention." Accordingly, R&M was required to demonstrate that Paris Parts committed trademark infringement while in the course of using some notice to attract public attention, publicity article, broadcast, or telecast.

**{¶ 26}** Here, R&M alleged in its complaint that Paris Parts committed trademark infringement by using R&M's trademark "in connection with the sale, offering for sale, distribution *or* advertising of [Paris Parts's] goods." (Emphasis added.) Complaint (May 15,

2006), ¶ 42.   Given that the advertising allegation is in the disjunctive form, the agreed judgment against Paris Parts does not sufficiently establish whether the trademark was in fact used in the course of advertising.   Furthermore, R&M's complaint did not specifically allege that Paris Parts used the trademark in an advertisement, publicity article, broadcast, or telecast.   R&M also failed to file any documents or other materials with its motion for summary judgment establishing that Paris Parts used R&M's trademark in an advertisement, publicity article, broadcast, or telecast. Accordingly, there remains a genuine issue of material fact as to whether Paris Parts's trademark infringement was "committed in the course of advertising."

**{¶ 27}**   We also note that the policy requires the advertising injury offense to have occurred during the policy period of March 20, 2002 through March 20, 2005.   R&M's complaint does not allege the dates in which Paris Parts engaged in trademark infringement, and R&M filed nothing with its motion for summary judgment establishing that the offense occurred sometime between 2002 and 2005.   Accordingly, there is also a genuine issue of material fact as to whether the advertising injury was committed during the policy period.

**{¶ 28}**   Because there is a general issue of material fact as to whether the advertising injury triggered coverage under the policy, the trial court erred in granting summary judgment in favor of R&M.   We need not address whether the policy's exclusions and notice conditions apply to preclude coverage given that the existence of coverage is presently uncertain. Furthermore,  the determination of these issues would not change the fact that the trial court's summary judgment decision was made in error.

**{¶ 29}**   CIC's sole assignment of error is sustained.

### III.  Cross-Assignment of Error

**{¶ 30}**  R&M's sole assignment of error on cross-appeal is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING IN PART APPELLEE/CROSS-APPELLANT'S MOTION FOR PREJUDGMENT INTEREST IN THE AMOUNT OF $448,100.00.

**{¶ 31}**  In light of our decision finding that the trial court improperly granted summary judgment in favor of R&M, it is unnecessary to address R&M's assignment of error regarding prejudgment interest.  Any ruling on this matter would be premature given that it is uncertain whether R&M is entitled to damages against CIC under R.C. 3929.06.

### IV.  Conclusion

**{¶ 32}**  Having sustained CIC's sole assignment of error, we hereby reverse the judgment of the trial court and remand the cause for further proceedings.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ.,   concur.

Copies mailed to:

Todd A. Brenner
Richard M. Garner
Dennis R. Fogarty
Hon. Nick A. Selvaggio